IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. 1397-03






THE STATE OF TEXAS



v.



 MATTHEW WAYNE KURTZ, Appellee






ON PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY


 



 Womack, J., delivered the opinion of the Court, in which Meyers, Price,
Johnson, Keasler, Hervey, and Cochran, JJ., joined. Holcomb, J., filed
a dissenting opinion, in which Keller, P.J., joined.



 The question in this appeal is whether an officer of the police department of a city
has authority to stop a person for committing a traffic offense when the officer is in
another city within the same county. We hold that the officer does not have such authority.

Facts


 On August 12, 2001, Steven Boyd, a police officer of the City of Plano, noticed a
vehicle that was going west on a multi-lane, divided highway (State Highway 121). He saw
the vehicle cross from the right lane onto the improved shoulder of the highway, where it
traveled for several seconds. Then it moved unsteadily, from the shoulder to the right lane
and back to the shoulder, several times. When the vehicle ultimately returned to the right
lane of the highway, the officer stopped the vehicle and spoke to the driver, Matthew Kurtz.
The officer saw and smelled evidence of intoxication, so he arrested the driver for driving
while intoxicated. He took Kurtz to the Plano City Jail.

Procedural History


 The Collin County Attorney charged Kurtz with DWI. Kurtz moved to suppress the
evidence that the officer had obtained after the stop on the ground that it was obtained by
illegal acts. (1)

 The trial court concluded, "The only possible offenses Boyd may have initially
observed Kurtz commit  were traffic offenses, i.e., failure to maintain a single lane and
driving on the improved shoulder of a highway. TEX. TRANSP. CODE  §§ 545.060 and
 545.058."

 The court also found that the Plano officer stopped and arrested Kurtz in the City of
Frisco.

 The City of Plano and the City of Frisco are home-rule cities, each of which is
located in both Collin and Denton Counties. Plano is south of Frisco. For a distance of less
than a mile, the cities are contiguous. The trial court found that the boundary line of the
cities is the center line of the highway on which Kurtz was driving. Although the east-bound
lanes of the highway are in Plano, the west-bound lanes of the highway, where Kurtz was
driving and where he was stopped, are in Frisco.

 The trial court granted the appellee's motion to suppress evidence, and the State
appealed. A divided panel of the Fifth Court of Appeals affirmed. (2) We granted review.

Relevant Statutes


 The general authority (and, in some circumstances, the duty) of peace officers to
arrest without warrant are set out in Article 14.03 of the Code of Criminal Procedure. The
portions of Article 14.03 that are most relevant to this particular case are:

 14.03. Authority of Peace Officers


 (a) Any peace officer may arrest, without warrant:


 (1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of
some felony, violation of Title 9, Chapter 42, Penal Code, breach of
the peace, or offense under Section 49.02, Penal Code, or threaten, or
are about to commit some offense against the laws; .


 


 (d) A peace officer who is outside his jurisdiction may arrest, without
warrant, a person who commits an offense within the officer's presence or
view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code,
or a breach of the peace. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense
and take the person before a magistrate in compliance with Article 14.06 of
this code.


 


 (g) A peace officer listed in Subdivision (1), (2), (3), (4), or (5),
Article 2.12, who is licensed under Chapter 415, Government Code, and is
outside of the officer's jurisdiction may arrest without a warrant a person
who commits any offense within the officer's presence or view, except that
an officer who is outside the officer's jurisdiction may arrest a person for a
violation of Subtitle C, Title 7, Transportation Code, only if the officer is
listed in Subdivision (4), Article 2.12. A peace officer making an arrest under
this subsection shall as soon as practicable after making the arrest notify a
law enforcement agency having jurisdiction where the arrest was made. The
law enforcement agency shall then take custody of the person committing the
offense and take the person before a magistrate in compliance with Article
14.06.


 These portions of Article 14.03 refer to several other statutes. One is Article 2.12
of the Code of Criminal Procedure which, at the time that Officer Boyd stopped Kurtz,
read, in part:

 Art. 2.12. Who Are Peace Officers


 The following are peace officers:


 (1) sheriffs, their deputies, and those reserve deputies who
hold a permanent peace officer license issued under Chapter 415,
Government Code; (3)

 (2) constables, deputy constables, and those reserve deputy
constables who hold a permanent peace officer license issued under
Chapter 415, Government Code;

 (3) marshals or police officers of an incorporated city, town,
or village, and those reserve municipal police officers who hold a
permanent peace officer license issued under Chapter 415, Government Code;

 (4) rangers and officers commissioned by the Public Safety
Commission and the Director of the Department of Public Safety;

 (5) investigators of the district attorneys', criminal district
attorneys', and county attorneys' offices; .


 Another statute to which Article 14.03 refers is Article 14.06 of the Code of
Criminal Procedure, which at the time the appellee was stopped, read:

 Art. 14.06. Must take offender before magistrate


 (a) Except as provided by Subsection (b), in each case enumerated in
this Code, the person making the arrest shall take the person arrested or have
him taken without unnecessary delay, but not later than 48 hours after the
person is arrested, before the magistrate who may have ordered the arrest,
before some magistrate of the county where the arrest was made without an
order, or, if necessary to provide more expeditiously to the person arrested
the warnings described by Article 15.17 of this Code, before a magistrate in a
county bordering the county in which the arrest was made. The magistrate
shall immediately perform the duties described in Article 15.17 of this Code.

 (b) A peace officer who is charging a person, including a child, with
committing an offense that is a Class C misdemeanor, other than an offense
under Section 49.02, Penal Code, may, instead of taking the person before a
magistrate, issue a citation to the person that contains written notice of the
time and place the person must appear before a magistrate, the name and
address of the person charged, and the offense charged. (4)


 Article 14.03 also refers to "Subtitle C, Title 7, Transportation Code." The subject
of Title 7 of the Transportation Code is "Vehicles and Traffic," and the subject of Subtitle C
is "Rules of the Road." In Subtitle C are the sections that the trial court cited in its conclusions: Section 545.058 ("Driving on Improved Shoulder") (5) and Section 545.060 ("Driving
on Roadway Laned for Traffic"). (6)

Discussion


 The authority of a peace officer to arrest without warrant for an offense committed
within the officer's presence or view when the officer is outside the officer's jurisdiction
was significantly altered in 1995 by the act of the legislature that added Subdivision (g) to
Article 14.03 of the Code of Criminal Procedure. The act limited the authority of peace
officers to arrest without warrant in two ways:

 (1) The act gave only five categories of peace officers the general authority to arrest
without warrant for any offense committed within their presence or view when they were
outside their jurisdictions. All other categories of peace officers were not given such
extra-territorial authority to arrest without warrant. At this time, there appear to be thirty-three categories of peace officers who are not given such authority to arrest without
warrant when they are outside their jurisdictions: three categories of "reserve" officers
(reserve deputy sheriffs, reserve deputy constables, and reserve municipal police officers)
if they do not hold a permanent peace officers license, (7) and the thirty other categories of
peace officers who are listed in Subdivisions (6) through (34) of Article 2.12. (8)

 (2) From four of the five categories of peace officers who were given general
authority to arrest without warrant for offenses committed within their presence or view
when they were outside their jurisdictions, the act took away the authority to arrest for the
traffic offenses that are violations of the Rules of the Road in the Transportation Code.
Only rangers and officers of the Department of Public Safety were given authority to make
an extra-territorial arrest without warrant for such offenses.

 This act was very specific and clear in not giving police officers and marshals of
cities, towns, and villages the authority to arrest without warrant for violations of the Rules
of the Road that are committed in their presence or view when they are outside their
jurisdictions. There is no room in Article 14.03(g) for us to find any authority for Officer
Boyd of the Police Department of the City to Plano to arrest without warrant for a violation
of the Rules of the Road when he was outside the city.

 The State's argument on the issue of the officer's authority to arrest is that our
decision in Angel v. State, 740 S.W.2d 727 (Tex. Cr. App. 1987), "held that a city police
officer's jurisdiction is county-wide." (9) The 1995 statute says something quite different, as
we have explained.

 The State's argument that "if the legislature intended to change Angel, it could have
done so more closely in time to the Angel decision and could have been more explicit" (10)
has no merit. The statute could not be more clear: DPS officers have authority to arrest
without warrant for violations of the Rules of the Road statutes committed in their
presence or view; other peace officers do not when they are outside their jurisdictions. The
legislature and the governor said so in 1995. Whatever authority Angel may have had at one
time, it cannot now give authority to Officer Boyd.

 The State also says, "Alternatively, this court should establish that city officers may
act as peace officers anywhere in their county when their action preserves the peace in their
city." (11) We should do this because "courts, whenever reason and equity demand, have been
the primary instruments for changing the common law through a continual re-evaluation of
common law concepts in light of current conditions." (12)

 But the courts of common law or equity will not extend the city officer's authority
to arrest. "Independent of statute, the authority or jurisdiction of the marshal would not
extend beyond the city limits." (13) So the Supreme Court said in 1895, when there was
certified to it the question, "Can the marshal of a town incorporated under the general laws
of this state, by virtue of his office, under the circumstances specified in article 229 of the
Code of Criminal Procedure, lawfully arrest one beyond the limits of the town for a felony
committed within the county, but not within the town?" (14) And so we believe the law to be
today.

 The State argues with some force that rapid growth of cities leads to changes in their
boundaries, and that cities have an interest in protecting their citizens from dangerous
drivers near their boundaries. (15) We also know that the rapid growth of cities has led more of
them to expand into multiple counties, and more of them to become contiguous. If this
court could and would adopt the rule for which the State argues in this case, that every city
police officer may arrest without warrant anywhere in the county in which the city is
located, the result would be that the police officers of Plano could arrest without warrant in
any city in Collin and Denton Counties, and the police officers of any city in Collin and
Denton Counties could arrest without warrant in Plano. In addition to Plano and Frisco,
Collin County encompasses all or part of 26 other towns and cities, including Dallas,
Richardson, and McKinney. (16) Denton County encompasses 36 other cities, including all or
parts of Dallas, Denton, Fort Worth, and Lewisville. (17) Whether all or any of these cities
would welcome warrantless arrests by the police officers of other cities, we do not know.
When it comes to arrests without warrant for traffic offenses, the legislature has said that
officers may not make them in cities other than their own. We think the courts must accept
that decision.

 The record discloses interlocal agreements between the cities of Plano and Frisco
that show the interest of the City of Plano in controlling traffic by the use of traffic signals,
and the interest of the City of Frisco "to promote development by retaining full and sole
control over driveway locations on the north side of State Highway 121." (18) The balance of
these and other interests against the interest in enforcing the Rules of the Road is for the
cities to strike when they draw boundaries and make agreements. It is not for this court.

 The State likens this case to our recent decision in Yeager v. State, (19) in which we
held that officers, who had authority to seize a motorist when he drove erratically in their
city, continued to have authority to pursue and seize him outside the city. We rely on the
trial court's findings that none of Officer Boyd's observations or actions took place in his
city.

 The State also invites us to find that the officer had authority "to preserve the peace
in his jurisdiction" by stopping Kurtz in the City of Frisco before he veered from the
shoulder and the right lane across the other west-bound lanes and across the dividing
median into the east-bound lanes in the City of Plano. (20) But these are not the facts of the
case. We have no occasion today to consider a case in which a city officer sees a person
outside the city carrying destruction toward the city limits, and acts to arrest for a breach of
the peace. (21) This was a detention for violation of a Rules of the Road statute, which was
followed by an arrest for DWI.

 The dissenting opinion, post, would reverse the judgments of the courts below
because Officer Boyd had reasonable suspicion of the appellee's committing the offense of
DWI. We believe that the dissenting opinion is not supported by the facts of this case. The
trial court concluded that "the only possible offenses" that the officer "may have initially
observed were traffic offenses." We read this as a finding that DWI was not a possible
offense that Officer Boyd initially observed. Which brings us to the State's remaining
argument.

 The State argues that, whatever Article 14.03 may do to limit Officer Boyd's
authority to arrest, "no statute limits the officer's authority to perform an investigative
detention." (22) The State has not taken into account the way the term "arrest" is used in
enforcement of the Rules of the Road statutes.

 Section 543.001 of the Transportation Code provides generally, "Any peace officer
may arrest without warrant a person found committing a violation of this subtitle," which is
Subtitle C of Title 7 -- the "Rules of the Road" subtitle. The Code makes it clear that its
use of the term "arrest" is not limited to a custodial arrest.

 Although the Transportation Code uses the term "arrest" to describe the
process by which a person is detained and later released pursuant to a promise to appear, it is clear that this procedure involves what both the courts and
common usage refer to as a "traffic stop." If fealty to the statutory language
requires that the detention involved be labeled an arrest, it is not the sort of
"custodial arrest" that subjects the person to the incidental searches allowed
by Fourth Amendment law. (23)


 These Transportation Code "arrests" are temporary detentions that may end without further
official action, or with the issuance of a written notice to appear (24) (which is the only action
authorized when the "arrest" is to charge a Texas resident who is operating a vehicle
licensed in Texas with an offense of speeding or a violation of the open container law), (25) or
by the custodial arrest that is followed by taking the arrested person before a magistrate. (26)

 The same meaning should be given to the term "arrest" when Code of Criminal
Procedure Article 14.03(g) says "that an officer who is outside the officer's jurisdiction
may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the
officer is listed in Subdivision (4), Article 2.12." This clause is closely linked to Subtitle
C, and the term "arrest" should have the same meaning in this clause that it has in Subtitle C.
We therefore reject the State's argument that no statute limited Officer Boyd's traffic stop
of Kurtz. This clause of Article 14.03(g) limited it.

 Because Officer Boyd was outside his jurisdiction when he arrested Kurtz by
temporarily detaining him for violating the Rules of the Road, and he is not an officer who
is listed in Subdivision (4) of Article 2.12 of the Code of Criminal Procedure, the arrest
was in violation of Article 14.03(g) of the Code. Evidence that was obtained in violation of
that article may not be admitted in evidence against the accused in the trial of a criminal
case, (27) and the courts below were correct to say that it must be excluded. 

 The judgment of the court of appeals is affirmed.


En banc.

Delivered October 20, 2004.

Publish.
1. See Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer or other
person in violation of any provision of the Constitution or laws of the State of Texas  shall be
admitted in evidence against the accused on the trial of any criminal case").
2. State v. Kurtz, 111 S.W.3d 315 (2003).
3. Chapter 415 of the Government Code was repealed when the Occupations Code was
enacted. See Occupations Code Act of May 28, 1999, 76th Leg., R.S., ch. 388, § 6(b)(1), 1999 Tex.
Gen Laws 1431, 2440. It was replaced by Chapter 1701 of the Occupations Code. According to the
caption of the Act, it was "a nonsubstantive revision of statutes." Id., at 1431.
4. The Texas Fair Defense Act of June 14, 2001 amended article 14.06(a) to require that the
arrested person be taken before the magistrate not later than 48 hours after the arrest, and it permitted
the taking to be made by a person who had custody of the arrested person. See Acts, 77th Leg., R.S.,
ch. 906, § 3, 2001 Tex. Gen. Laws 1800, 1801.
5. "(a) An operator may drive on an improved shoulder to the right of the main traveled portion
of a roadway if that operation is necessary and may be done safely, but only:

 (1) to stop, stand, or park;

 (2) to accelerate before entering the main traveled lane of traffic;

 (3) to decelerate before making a right turn;

 (4) to pass another vehicle that is slowing or stopped on the main traveled portion of
the highway, disabled, or preparing to make a left turn;

 (5) to allow another vehicle traveling faster to pass;

 (6) as permitted or required by an official traffic-control device; or

 (7) to avoid a collision."
6. "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic:

 (1) shall drive as nearly as practical entirely within a single lane; and

 (2) may not move from the lane unless that movement can be made safely."
7. See Tex. Code Crim. Proc. art. 2.12(1)-(3).
8. "(6) law enforcement agents of the Texas Alcoholic Beverage Commission;

 "(7) each member of an arson investigating unit commissioned by a city, a county, or the state;

 "(8) officers commissioned under Section 37.081, Education Code, or Subchapter E, Chapter
51, Education Code;

 "(9) officers commissioned by the General Services Commission;

 "(10) law enforcement officers commissioned by the Parks and Wildlife Commission;

 "(11) airport police officers commissioned by a city with a population of more than 1.18 million
that operates an airport that serves commercial air carriers;

 "(12) airport security personnel commissioned as peace officers by the governing body of any
political subdivision of this state, other than a city described by Subdivision (11), that operates an
airport that serves commercial air carriers;

 "(13) municipal park and recreational patrolmen and security officers;

 "(14) security officers and investigators commissioned as peace officers by the comptroller;

 "(15) officers commissioned by a water control and improvement district under > Section
49.216, Water Code;

 "(16) officers commissioned by a board of trustees under Chapter 54, Transportation Code;

 "(17) investigators commissioned by the Texas State Board of Medical Examiners;

 "(18) officers commissioned by the board of managers of the Dallas County Hospital District,
the Tarrant County Hospital District, or the Bexar County Hospital District under Section 281.057,
Health and Safety Code;

 "(19) county park rangers commissioned under Subchapter E, Chapter 351, Local Government
Code;

 "(20) investigators employed by the Texas Racing Commission;

 "(21) officers commissioned under Chapter 554, Occupations Code;

 "(22) officers commissioned by the governing body of a metropolitan rapid transit authority
under Section 451.108, Transportation Code, or by a regional transportation authority under Section
452.110, Transportation Code;

 "(23) investigators commissioned by the attorney general under Section 402.009, Government
Code;

 "(24) security officers and investigators commissioned as peace officers under Chapter 466,
Government Code;

 "(25) an officer employed by the Texas Department of Health under Section 431.2471, Health
and Safety Code;

 "(26) officers appointed by an appellate court under Subchapter F, Chapter 53, Government
Code;

 "(27) officers commissioned by the state fire marshal under Chapter 417, Government Code;

 "(28) an investigator commissioned by the commissioner of insurance under Article 1.10D,
Insurance Code;

 "(29) apprehension specialists commissioned by the Texas Youth Commission as officers under
Section 61.0931, Human Resources Code;

 "(30) officers appointed by the executive director of the Texas Department of Criminal Justice
under Section 493.019, Government Code;

 "(31) investigators commissioned by the Commission on Law Enforcement Officer Standards
and Education under Section 1701.160, Occupations Code;

 "(32) commission investigators commissioned by the Texas Commission on Private Security
under Section 1702.061(f), Occupations Code;

 "(33)[ as amended by Act of June 18, 2003, 78th Leg., R.S., ch. 235, § 16, 2003 Tex. Gen.
Laws 1063, 1070, and Act of June 20, 2003, 78th Leg., R.S., ch. 930, § 12, 2003 Tex. Gen. Laws
2773, 2777] the fire marshal and any officers, inspectors, or investigators commissioned by an
emergency services district under Chapter 775, Health and Safety Code.

 "(33)[ as amended by Act of June 20, 2003, 78th Leg., R.S., ch. 474, § 1] the fire marshal,
and any investigators commissioned by an emergency services district to assist that fire marshal, under
Subchapter F, Chapter 775, Health and Safety Code; and

 "(34) officers commissioned by the State Board of Dental Examiners under Section 254.013,
Occupations Code, subject to the limitations imposed by that section." Id., art. 2.12(6)-(34).
9. Brief, at 6.
10. Id., at 8.
11. Id., at 10.
12. Ibid. (quoting Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 899 (Tex. 2000)
(deciding the meaning of the term "damages")).
13. Newburn v. Durham, 88 Tex. 288, 289, 31 S.W. 195, 195 (1895).
14. Id., at 288, 31 S.W., at 195.
15. Brief, at 12-13.
16. Texas Almanac 2004-2005 165.
17. See id., at 177.
18. See State's Exhibit 1.
19. 104 S.W.3d 103 (Tex. Cr. App. 2003).
20. Brief, at 11-12.
21. See Tex. Code Crim. Proc. art. 14.03(d), supra, at 4.
22. Brief, at 9.
23. George E. Dix & Robert O. Dawson, 40 Texas Practice -- Criminal Practice and
Procedure § 10.14 (2d ed. 2001) (footnote omitted).
24. See Tex. Trans. Code 543.003.
25. See id., § 543.004.
26. See id., § 543.002.
27. See Tex. Code Crim. Proc. art. 38.23(a).